MICHAEL WEBSTER, PROSECUTOR, v. MUNICIPAL EMPLOYES' PENSION COMMISSION OF THE CITY OF JERSEY CITY, DEFENDANT.

Submitted January 25, 1935—Decided April 25, 1935.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and BODINE.

For the prosecutor, *Joseph B. Gallagher.*

For the defendant, *N. Louis Paladeau, Jr.*

The opinion of the court was delivered by

PARKER, J. The case arises under chapter 190 of the laws of 1927. *Pamph. L., p.* 365. It is entitled "An act providing for the retirement of certain municipal employes in cities of

the first class of this state and providing a pension for such retired municipal employes and their dependents."

The first section provides in substance that any municipal employe who has served for twenty years and reached the age of sixty may be retired on his own application.

The second section provides, among other things, that if any such employe who has served for twenty years and paid his contributions shall die from causes other than injuries or illness received in the line of duty, then subject to limitations thereinafter provided, a pension of one-half the salary received at the time of the death shall be paid to the widow, dependent husband, children under the age of sixteen years or dependent parents, as the case may be; the pension to be limited to a thousand dollars annually. In the event there is no widow, dependent husband and no children under sixteen years, then the pension shall be paid to the dependent parent or parents, if any, of such deceased municipal employe.

Section 3 provides that where the employe dies from causes other than injuries or illness in the line of duty and had not been retired or pensioned, and had paid the annual contributions and served the municipality for five years, then the amount of pension is to be twenty-five per cent. of what would have been paid for twenty years' service, and for each additional year the proportionate amount shall be increased five per cent. per annum.

The admitted facts appear to be that Harry P. or Henry P. Webster, son of the prosecutor, had been an employe of Jersey City for fourteen years and had paid his pension contributions regularly for that time, consequently under the statute if any pension is payable it would be seventy per cent. of $1,000 or $700. So far there is no dispute.

The controversy arises under section 4 of the act which provides, among other things, that no pension shall be paid to any dependent parent "unless said * * * dependent parent or parents shall be and shall continue to remain dependent upon the income which the said employe was receiving at the time of her (sic) death. The pension commission shall determine the question of the dependency of the surviving * * * parent."

We learn from the depositions that Harry P. Webster was not married at the time of his death, and besides his father, who was a widower, there are several brothers and sisters, some of whom are married, others not.

The present proceeding originated in a rule to show cause why a writ of *certiorari* should not issue "to review the refusal of a pension to the prosecutor herein;" and that rule provided for the taking of depositions. It was dated August 22d, 1934, but apparently not entered in the minutes until November 10th of the same year. The depositions that are printed in the book were taken on September 27th, 1934, and October 10th, 1934. The rule to show cause was continued until November 3d, on which date it was argued before the Chief Justice and he allowed the present writ, which calls for "a certain decision rendered on or about June 15th, 1933, by the municipal employes' pension commission of the city of Jersey City, in relation to the application to said commission by Michael Webster for a pension," &c. The substantial part of the return consists of a sort of schedule indicating the employment of Harry Webster and amount of payments, with particulars of birth, name of father, &c. This seems to have been signed by Harry Webster. It shows certain payments made into the pension fund; that he died June 3d, 1933 (no dependents) and that the payments were refunded on September 1st pursuant to resolution of August 26th. Then follows a certified copy of a minute which reads as follows:

"Whereas Harry Webster, Carpenter, Repair Bureau, Department of Parks and Public Property, died June 3d, 1933, and

"Whereas, the said Harry Webster had no dependents, Now, therefore, be it resolved, that the Secretary and Treasurer be authorized and directed to draw a warrant to the estate of Harry Webster in the amount of $547.55, representing the actual contributions that Harry Webster made to the Municipal Employes Pension Fund."

It appears by a letter attached to the petition for the writ that the secretary of the commission wrote to prosecutor's attorney July 27th, 1934, stating that the commission had

drawn a check to the estate of Harry Webster for the payments made into the fund, which check is available at any time and adding: "This commission is not in accord with your belief that the father is entitled to a pension, on the grounds that there are four brothers and two sons living, and certainly, in view of these circumstances, the father could not be classified as being dependent upon the son who is dead."

This is not strictly part of the record before us but is informative as to the condition of the case at that time.

On careful examination of the printed book we are clearly of the opinion that a final decision of this matter would be premature. In fact, there is nothing before us to support a decision on the merits. What is evidently desired by the prosecutor is that this court will review the facts on the basis of the depositions that were taken under the rule to show cause as a preliminary to the award of the writ, and on those depositions make a finding that the prosecutor is a dependent parent of the deceased in the sense intended by the statute, and entitled to a pension as such. The case, however, is in no such condition as to support any such action. The plain language of the statute is that the decision of this question should be made in the first instance by the board which is manifestly designated as a judicial body to consider and decide the question in a judicial way. That means that the board must hold a hearing on due notice to all parties concerned and take evidence by the testimony of witnesses and the submission of such documents as are relevant and competent. This is what was done in the case of *Moore v. Pension Commission,* 10 *N. J. Mis. R.* 854; affirmed on opinion below in 112 *N. J. L.* 117. It was what the pension commission refused to do in *Simmons* v. *Policemen's Pension Commission,* 8 *N. J. Mis. R.* 408, in which case this court required them to do it by a writ of *mandamus.* It is what the same commission afterwards did in the second suit between the same parties on *certiorari* reported in 111 *N. J. L.* 134.

What the Jersey City commission seems to have done in the present case was simply to decide the matter *ex parte* and

without taking evidence; if, indeed, the return to the present writ shows that it was decided at all. There was no real evidence before the commission; and there is no evidence except the return that is properly before us. The depositions that were taken, were taken for the sole purpose of informing the court or a justice of such facts as would enable him to decide whether or not to award the present writ. They are legally unavailable at this time for our use.

However, we conclude that the "decision" should be set aside not on any fundamental merits of the question whether the father is a dependent and entitled to a pension, but because this question has never been properly tried out in and decided by the primary tribunal designated by the statutes provided for that purpose. There may be some question whether there is in law any decision on which the writ can act. If not, the writ should be dismissed with an intimation to the commission to proceed and try the case in the manner that we have indicated. If there is a basis for the operation of the writ, then for the second reason advanced by the prosecutor, such action should be set aside with similar direction. That reason is that "defendant reached its conclusion that prosecutor was not a dependent within contemplation of the acts, without an adequate investigation of prosecutor's financial circumstances, his actual dependence or independence of his deceased son for support and maintenance, or his ability to maintain himself."

On the whole we think it better to view the refusal of the board to allow a pension as a decision which ought to be set aside for the reasons above indicated, and to the end that the pension commission may, by proper hearing on due notice, ascertain the facts and decide accordingly.

The question as to what is meant by the phraseology of the statute relating to a dependent father is raised in the briefs, but it would be premature at this time to undertake to say under just what circumstances and conditions the relations of a dependent should be considered to exist.

No costs should be allowed either party under the present writ.